IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

MICHAEL BRANDON ADAMS,           )
                                 )
    Plaintiff,                   )
                                 )
v.                               )   Case No. 1:15-cv-00115
                                 )   Judge Crenshaw / Frensley
TENNESSEE DEPARTMENT OF          )
CORRECTION, et al.,              )
                                 )
    Defendants.                  )

# REPORT AND RECOMMENDATION

## I.  Introduction and Background

This matter is before the Court upon a Motion to Dismiss filed by Defendants Tammy Ford, Bobby Leek, and Felessia Johnson ("Defendants") pursuant to Fed. R. Civ. P 12(b)(3) and (6).  Docket No. 125.[1]  As grounds for their Motion, Defendants argue that this Court is the improper venue for the claims brought against them and that Plaintiff's Complaint fails to state a claim upon which relief can be granted as to several of the allegations against them.  *Id.*  Defendants argue that, as relates to them specifically, Plaintiff avers that they denied him a diet consistent with his religious beliefs between April 1, 2015 and May 14, 2015, when he was incarcerated at the Whiteville Correctional Facility ("WCF"), and further avers that Defendants Ford and Johnson violated his due process rights during his incarceration at WCF.  Docket No. 126, *citing* Docket Nos. 1, 1-2.

Plaintiff filed this pro se, in forma pauperis, action pursuant to 42 U.S.C. §1983 and the

---

[1] No other Defendants are parties to the instant Motion; accordingly, this Report and Recommendation applies solely to Defendants Ford, Leek, and Johnson.

Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), alleging that multiple Defendants from several correctional institutions violated his constitutional rights. Docket Nos. 1, 1-2.  Plaintiff sues the instant Defendants in their individual and official capacities: Defendant Ford as the WCF Warden, Defendant Leek as the WCF Chaplain, and Defendant Johnson as the WCF Grievance Chairperson.  *Id.*, ¶¶ 19, 20, 21.  Plaintiff argues, "Venue properly lies in this District pursuant to **28 U.S.C. § 1391** based on the events giving rise to this Cause of Action occurred at Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee which is located in the Middle Division; *Whiteville Correctional Facility ("WCCF") in Whiteville, Tennessee which is in the Western Division* and South Central Correctional Facility ("SCCF") in Clifton, Tennessee which is in the Middle Division."  *Id.*, ¶ 3 (boldface original, italics added).

The allegations in Plaintiff's Complaint against the instant Defendants, in their entirety, are as follows:

> 40.  On the date of April 1, 2015, Plaintiff was transferred from Riverbend Maximum Security Institution to Whiteville Correctional Facility.
>
> 41.  Plaintiff began requesting that he be allowed to receive his religious diet that he had been receiving prior to his arrival to Whiteville Correctional Facility.  Pursuant to TDOC Policy #116.08(VI.)(3.)(a.)&(b.) "**a.** *Upon inmate transfer to another facility, the person doing orientation shall inquire whether the inmate has a current approved Religious Diet.  Verification will be made by checking the inmate file and contacting the sending facility.  Notification will be made to the food services manager/designee by telephone immediately and a copy will be forwarded to the food service manager and Chaplain of the receiving facility.  If there is a question as to whether the diet is approved, the inmate will be given the religious diet meal until the verification of the religious diet approval from the sending facility*

*can be made by the receiving facility staff.*
b. *The completed request for Religious Diet Program Participation and Agreement, CR-3814, shall be retained by the Chaplain and a copy forwarded to the Food Service Manager."*

42. After initial denials of Whiteville Correctional Facility staff to provide Plaintiff with his requested religious diet, on the date of April 5, 2015, Plaintiff submitted an Inmate Grievance authorized by TDOC Policy #118.01(VI.)(G.)(1-4.). According to Defendant Johnson and Defendant Ford, "*WCF doesn't follow policy 116.08 only 118.01.*" Relying on their response to Plaintiff's grievance to be the *be-all-to-end-all*, this response was rendered contrary to what TDOC Policy #118.01(III.) states under the portion aptly entitled "**APPLICATION**": "*To all Tennessee Department of Correction (TDOC) staff, volunteers who are involved in the operation of religious programming, all inmates, and* **employees of privately managed institutions**."

43. Plaintiff subsequently filed, on the date of May 5, 2015, an *Individual Request for Religious Accommodations* pursuant to TDOC Policy #118.01(VI.)(E.)(1.)(a.) to Defendant Leek. Defendant Leek never answered nor forwarded to Defendant Ford as required by this Policy. "**a.** *The inmate shall submit the form to the Chaplain for consideration. Within ten days of receipt,* ***the Chaplain shall send a copy of the request (with his/her recommendations) to the Warden for his/her approval or disapproval.***"

44. On the day of May 14, 2015, Appellant was transferred to South Central Correctional Facility Annex.

. . .

49. The refusal of Whiteville Correctional Facility and South Central Correctional Facility's officials willful refusal to provide Plaintiff with the request [*sic*] Halaal diet is a blanket corporate policy that Corrections Corporation of America has instituted through the approval of the Tennessee Department of Correction.

. . .

94. On the date of April 1, 2015, the Plaintiff arrived at Whiteville Correctional Facility.

3

95. Upon arriving at the facility, Plaintiff instantly requested that he be provided his religious diet that he was previously approved for and receiving before his untimely transfer to the current institution. Plaintiff was denied his religious diet the entire time he was housed at Whiteville[2]

. . .

102. Six (6) days later on the date of April 1, 2015, the Plaintiff was transferred to Whiteville Correctional Facility . . .

103. The Plaintiff was placed on a *Special Chain* that departed from Riverbend Maximum Security Institution at 5 p.m. that night and arrived at Whiteville Correctional Facility at 8:21 p.m.

. . .

106. On the date of April 1, 2015, the Plaintiff arrived at Whiteville Correctional Facility.

107. Upon arriving at the facility, Plaintiff instantly requested that he be provided his religious diet that he was previously approved for and receiving before his untimely transfer to the current institution. Plaintiff was denied his religious diet the entire time that he was housed at Whiteville Correctional Facility . . . thereby causing a substantial burden, as per RLUIPA, to be placed upon the Plaintiff.

108. On the date of May 14, 2015, the Plaintiff arrived at South Central Correctional Facility-Annex. Upon arriving to the facility, Plaintiff requested that he be provided his religious diet that he had been denied while at Whiteville Correctional Facility, but had been previously approved for and receiving before his untimely transfer to the current institution.

. . .

---

[2] The Complaint that Plaintiff submitted that is docketed as Docket No. 1 is ten (10) pages and ends in the middle of a sentence, as quoted above. The same day, Plaintiff submitted another filing titled as a Complaint that is twenty-seven (27) pages; this submission is docketed as Docket No. 1-2.

4

130. On the date of April 1, 2015, Plaintiff was transferred from Riverbend Maximum Security Institution to Whiteville Correctional Facility.

131. On the date of May 12, 2015, Petitioner was reclassified by Amy Trotter, Classification Coordinator of Whiteville Correctional Facility.[3] This reclassification changed the Petitioner's classification/security level from that of "Minimum Trusty" to that of "Minimum Direct."

. . .

139. On the date of April 5, 2015, Plaintiff submitted an Inmate Grievance to Defendant Johnson regarding *denial of religious diet*.

140. On the date of April 8, 2015, Plaintiff received his Inmate Grievance from Defendant Johnson. Defendant Johnson issued *Inappropriate Grievance Notification* to the Plaintiff citing that the Plaintiff's grievance was unable to be processed due to "*1. No specific details i.e. dates, times, names of persons involved as mandated in Inmate Grievance Handbook, Page 7, First Level of Review.*" and "*4. Mr. Adams, WCF doesn't follow policy 116.08 only 118.01. You aren't pressing hard enough to read all pages. Who have you been requesting this meal through? Have you spoken to the chaplain?*"

141. On the date of April 13, 2015, Plaintiff appealed Defendant Johnson's decision as well as forwarding a letter to Defendant Johnson informing Defendant Johnson that ever since arriving at WCFA, the institution had been on "lock-down" and that Plaintiff had only contact with officers located in the "bubble" via an intercom system and that these officers informed Plaintiff that chaplain had not been available to speak with Plaintiff and that according to the TDOC Policy that Defendant Johnson informed Plaintiff that WCFA follows 118.01, it mandates that WCFA also follow TDOC Policy #116.08, as well.

. . .

---

[3] Amy Trotter is not a Defendant in this action. This allegation is included herein solely because it relates to Plaintiff's confinement in WCF.

143. On the date of April 14, 2015, Defendant Johnson stamped Plaintiff's Inmate Grievance as being "Received."

144. On the date of April 14, 2015, Defendant Johnson had Inmate Grievance Clerk approach Plaintiff and change date [*sic*] in which Plaintiff had "appealed" Inappropriate Grievance Notification from that of April 13, 2015 to the date of April 14, 2015.

145. On the date of April 14, 2015, the Plaintiff submitted an Inmate Grievance to Defendant Johnson against Riverbend Maximum Security Institution pursuant to TDOC Policy #501.01.

146. Defendant Johnson received Plaintiff's Inmate Grievance on the date of April 16, 2015; two (2) days after Plaintiff filed said grievance.

147. On the date of April 17, 2015, Defendant Ford issued a Level I Supervisor's Response in regard's [*sic*] to Plaintiff's Inmate Grievance concerning the *denial of religious diet.*

148. On the date of April 17, 2015, Defendant Johnson lists that Inmate Grievance Committee rendered response was rendered [*sic*] on the said date signifying that an actual Inmate Grievance Hearing was held on behalf of Plaintiff.

149. On the date of April 23, 2015, Defendant Ford agreed with response of Defendant Johnson.

150. Defendant Johnson stamped the Plaintiff's April 14, 2015 grievance as being received for a second time as April 24, 2015.

151. On the date of April 27, 2015, Plaintiff appealed Defendant Johnson's and Defendant Ford's response.

152. Plaintiff was transferred from WCFA to South Central Correctional Facility Annex ("SCCF") on the date of May 14, 2015.

153. Defendant Johnson lists that Inmate Grievance Committee rendered response was rendered [*sic*] on the date of May 15, 2015 signifying that an actual Inmate Grievance Hearing

was held on behalf of Plaintiff.

      154.  On the date of May 15, 2015, Defendant Johnson appealed Plaintiff's April 14, 2015 complaint *in absentia* to Defendant Ford.  Defendant Johnson states that there was No Response from RMSI officials concerning Plaintiff's grievance.

. . .

      156.  On the date of May 21, 2015, Defendant Ford agreed with response of Defendant Johnson.

      157.  On the date of May 26, 2015, Defendant Johnson appealed Plaintiff's April 14, 2015 complaint *in absentia* to Defendant Woodall.

. . .

      162.  Defendant Johnson acted arbitrarily by failing to forward the proper notification to the Plaintiff pursuant to TDOC Policy #501.01(VI.)(H.) Regarding Plaintiff's April 14, 2015 complaint.  *"Inappropriate grievance notification, CR-3689, **shall be used** to inform the inmate of an inappropriate grievance."*  Id. (Emphasis Plaintiff's Own).

      160.  [*sic*]  Defendant Johnson acted arbitrarily by forwarding Plaintiff's April 5, 2015 grievance to Defendant Ford on the date of April 14, 2015 instead of WCFA Chaplain who is in charge of all religious affairs at WCFA.

      161. [*sic*] Defendant Johnson acted illegally by *fraudulently* affixing the date of April 17, 2015 as the date in which Plaintiff designated as appealing decision of Inappropriate Grievance Notification for April 5, 2015 grievance.

      162. [*sic*] Defendant Johnson acted illegally by *fraudulently* affixing a second date of April 24, 2015 as the date in which Plaintiff's complaint was received.  Plaintiff had agreed to an extension to receive the appropriate response from RMSI on the date of April 24, 2015.

      164. [*sic*] Defendant Johnson acted arbitrarily when deeming Plaintiff's grievance *inappropriate*, due to it allegedly

7

being *past seven days* when it is plainly evident on Plaintiff's grievance, being stamped *Received* along with Defendant Johnson's initials, that Defendant Johnson received said grievance on the date of April 16, 2015.

165. [*sic*] Defendant Johnson acted arbitrarily when she deprived the Plaintiff the ability to *attach a clarification of the issues and/or any reaction/rebuttal to the Warden's/designee's response.* TDOC Inmate Grievance Handbook; Page 9.

166. [*sic*] Defendant Johnson acted arbitrarily by not following established institutional and departmental protocol in adequately and appropriately handling Plaintiff's legitimately filed complaints.

167. [*sic*] Plaintiff asserts that the Defendant Johnson [*sic*] deemed his grievances *inappropriate* on April 8, 2015, after Petitioner filed said complaint pursuant to institutional and departmental protocols.

. . .

169. [*sic*] Plaintiff received the notification on the date of May 5, 2015 while Plaintiff was facilitated at the Whiteville Correctional Facility. The Plaintiff then forwarded the appropriate paperwork needed from the WCFA trust fund guardian. This documentation was turned over to WCFA trust fund guardian May 9, 2015.

170. [*sic*] Defendants Ford and Johnson violated the Plaintiff's right to Due Process by failing to adhere to clearly established protocols that govern the actual inmate grievance process and conduct adequate and appropriate investigations into the Plaintiff's claims.

171. [*sic*] Plaintiff was transferred from Whiteville Correctional Facility to South Central Correctional Facility Annex on the date of May 14, 2015. As of the date of the Plaintiff's transferral to South Central Correctional Facility-Annex from Whiteville Correctional Facility, Plaintiff had not received the requested Certified Trust Fund Affidavit from the Whiteville Correctional Facility trust fund guardian.

Docket No. 1, ¶¶ 40-44, 49, 94-95 (bold face, italics, and capitalization original, footnotes added, original footnotes omitted); Docket No. 1-2, ¶¶ 40-44, 49, 94-95, 102-03, 106-08, 130-31, 139-41, 143-54, 156-57, 162- 67, 169-71 (bold face, italics, and capitalization original, footnotes added, original footnotes omitted).

In his Complaint, Plaintiff asks this Court to permit him to proceed in forma pauperis, to appoint him counsel, and to issue several orders. Docket No. 1-2, ¶¶ 214, 216, 222-29. Plaintiff additionally seeks declaratory and injunctive relief, as well as costs, fees, punitive damages in the amount of $2,500 from each Defendant, and any further relief the Court "deems fit and appropriate." *Id.*, ¶¶ 215, 217-21, 227-28, 230.

Defendants filed the instant Motion and supporting Memorandum on December 05, 2016, arguing that this Court is the improper venue for Plaintiff's claims against them because:

> Upon initial glance at Plaintiff's Complaint, it seems as though this Court would be the proper venue for Plaintiff's claims, as all of the named Defendants reside within Tennessee. However, as explained above, Plaintiff has essentially meshed multiple complaints - against RMSI/TDOC employees, against WCF employees, and against SCCF employees - into one document. Notably, other than Plaintiff being an inmate at each of these facilities, the claims brought against each group of named Defendants are separate and distinct, and they arise out of separate sets of facts at entirely different locations. As it relates to these Defendants, - Ford, Leek and Johnson - any and all claims alleged against them relate to Plaintiff's incarceration at WCF, and as accurately provided within Plaintiff's Complaint, "Whiteville Correctional Facility ("WCCF") in Whiteville, Tennessee . . . is in the Western District. . . ." [D.E. 1-2, p. 27]. Therefore, because all of these Defendants reside in the Western District of Tennessee and because all of the claims against these Defendants concern alleged actions/omissions occurring at a facility located in the Western District of Tennessee and are not related in any manner to the Plaintiff's other claims against other facilities, this Court is the improper venue for such claims.

Docket No. 126.

In the alternative, Defendants argue that "several of Plaintiff's remaining claims" against them fail to state a claim upon which relief can be granted and should be dismissed. *Id.* In particular, Defendants argue that Plaintiff's claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") should be dismissed because district courts within the Sixth Circuit have held that the RLUIPA does not authorize suits against persons in their individual capacities.[4] *Id., citing Wiley v. Ky. Dep't of Corr.*, 2012 U.S. Dist. LEXIS 166385, at *42 (E.D. Ky. Nov. 21, 2012); *Garrison v. Dutcher*, 2008 U.S. Dist. LEXIS 90504, at *4 (W.D. Mich. Spet. 30, 2008); *Horacek v. Burnett*, 2008 U.S. Dist. LEXIS 80477, at *1.

As to Plaintiff's RLUIPA claims against Defendants in their official capacities, Defendants contend, "As this Court recently explained, 'RLUIPA does not authorized monetary damages as a form of relief against a government or its officials for violations of its provisions.'" *Id., quoting Huddleston v. Wilson Cnty. Crim. Justice Complex*, 2016 U.S. Dist. LEXIS 46599 (M.D. Tenn. April 5, 2016)(*citing Sossamon v. Texas* 563 U.S. 277, 280 (2011)); *Haight v. Thompson*, 763 F.3d 554, 568-70 (6th Cir. 2014). With regard to Plaintiff's other official capacity claims against them, Defendants argue that because they are employees of Corrections Corporation of America ("CCA"), any such official capacity claims would actually be claims against CCA, but Judge Sharp, in his initial review of Plaintiff's Complaint in this action, found, "The plaintiff has offered no factual allegations whatsoever to support a claim against the Corrections Corporation of America. Thus, the claims against this defendant are DISMISSED as

---

[4] The Sixth Circuit itself has not directly addressed this issue, but the Eleventh Circuit in *Smith v. Allen,* 502 F.3d 1255, 1274 (2007), held that because the RLUIPA was enacted pursuant to Congress' Article I spending power and "the Spending Power cannot be used to subject individual defendants, such as state employees, to individual liability in a private cause of action," the RLUIPA did not authorize suits against persons in their individual capacities.

well." *Id., quoting* Docket No. 6, p. 3. Defendants maintain that because they stand in the shoes of CCA and because Judge Sharp dismissed CCA as a Defendant in this matter, any official capacity claims against them must be dismissed as well. *Id.*

Defendants additionally argue that Plaintiff, in his Compliant, "vaguely alluded to certain 'arbitrary' actions taken by Defendant Johnson and later concluded, without providing any substantive facts in support, that Defendants Ford and Johnson 'violated the Plaintiff's right to Due Process by failing to adhere to clearly established protocols that govern the actual inmate grievance process and conduct adequate and appropriate investigations into the Plaintiff's claims." *Id., quoting* Docket No. 1-2. Defendants maintain, "Although this Court did not specifically allow Plaintiff's 'due process' claims to proceed within the Order issued after its initial review, any such claims should be dismissed as Plaintiff has failed to provide sufficient facts to establish any such claims against these Defendants." *Id., citing* Docket No. 6. Specifically, Defendants argue that "Plaintiff has failed to allege sufficient facts to establish that he has been deprived of any liberty interest(s) due to any process(es) related to these Defendants while incarcerated at WCF. He has merely provided the naked assertion that Defendants Ford and Johnson violated his 'right to Due Process,' and thus, any and all such claims should be dismissed." *Id.*[5]

---

[5] Defendants note that liberally construing Plaintiff's allegations, Plaintiff's sole allegation that could possibly be construed as alleging a due process violation would be his allegation relating to the effectiveness of WCF's grievance procedure, which is insufficient to sustain a Due Process claim because there exists no constitutionally protected due process right to an effective prison grievance procedure. *Id., citing, e.g., Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002).

11

Defendants further assert that Plaintiff admittedly is no longer incarcerated at WCF and that "it is well-established that a 'prisoner's request for injunctive and declaratory relief is moot upon his transfer to a different facility.'" *Id., quoting Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013) (*citing Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). Defendants contend, therefore, that because Plaintiff is not entitled to injunctive, declaratory, and/or monetary relief in relation to his RLUIPA claims against them as a matter of law, any such claims should be dismissed. *Id.*

Plaintiff has filed a Response, arguing that venue in this Court is proper against the instant Defendants because, "Although the language of section 1391(b) would appear to be applicable to this case, it must be read in conjunction with section 1392 (a), which provides an exception when there are multiple defendants residing within the same state but in different districts. Section 1392 (a) reads: '(a) Any civil action, not of a local nature against defendants residing in different districts in the same State, may be brought in any such districts.'" Docket No. 144, p. 2.[6]

Plaintiff, in his Response, also argues that "Defendants have not clearly articulated the basis for their argument that the RLUIPA does not authorize suits against person [*sic*] in their individual capacity," and Plaintiff asserts that RLUIPA does, in fact, authorize suits against the instant Defendants in their individual capacities because it applies to actions by a "government," which has been defined to include any "official" of "a State, county, municipality, or other governmental entity created under the authority of a state." *Id.* at 4. As to Defendants' argument

---

[6] Although Plaintiff argues that 28 U.S.C. §1391(b) must be read in conjunction with 28 U.S.C. §1392(a), section 1392 has been repealed. *See* Pub. L. 112-63, Title II, §203, Dec. 7, 2011, 125 Stat. 764.

12

that Plaintiff likewise cannot sustain his official capacity claims against them, Plaintiff responds by citing a case from the Eleventh Circuit, which he argues demonstrates both that the instant Defendants can be held liable in their official capacities and that this Court can award him nominal damages, even though he did not seek them. *Id.* at 4-5.

Plaintiff additionally responds that his Due Process Claims against the instant Defendants should not be dismissed because, "Offenders committed to the TDOC and facilitated within TDOC-operated, and privately managed, facilities and institutions have a protectable [*sic*] liberty interest in the grievance procedure due to the fact that Tennessee has codified the nature and purpose of the inmate grievance process at two (2) separate and distinct locations within Tennessee Code Annotated [§41-21-806 (claims subject to review by grievance committees and §41-24-817 (grievance resolution system)]." *Id.* at 6-7. Plaintiff further maintains, "with the Defendants failing to adhere to the same [exhaustion] requirements that they demand the Plaintiff to follow, they fail to allow the Plaintiff to properly exhaust these remedies, he is very much so being denied his right to procedural due process in developing his issues to ripen them for review before the court." *Id.* at 8.

Finally, Plaintiff argues:

> By no means and in no way has the Plaintiff ever placed before the court a claim stating that he had the right to file a grievance nor his right to an effective prison grievance procedure, as the Defendants are attempting to persuade the court into believing. It is quite the contrary in being that the Plaintiff's issue is that the Defendants have failed to adhere to the clearly established protocols that govern the actual inmate grievance process found embedded not only in TDOC Administrative Policies and Procedures, but within Tennessee state law as well and thereby violating the Plaintiff's procedural due process rights. State law may create a right to grievance procedure; under some circumstances officials' failure to

13

> comply with such a state law mandate may state a constitutional claim. *Lucas v. Wasser*, 425 F.Supp. 955, 961 (S.D.N.Y. 1976).
>
> > The Defendants are required by Tennessee state law to "develop and maintain a system for the resolution of grievances by inmates housed in facilities operated by the department that qualifies for certification under 42 U.S.C. 1997e, and the department shall obtain certification under that section." Tennessee Code Annotated § 41-21-817(s). Although Defendants are CCA employees, by their own admission, "Whiteville Correctional Facility strictly follows the inmate grievance policies and procedures set out by the Tennessee Department of Correction." (See Exhibit 2; Page 4-Defendant Johnson's Responses to Plaintiff's Interrogatories and Request for Production of Documents).

*Id.* at 8-9.

With leave of Court (Docket No. 152), Defendants have filed a Reply (Docket No. 153). In their Reply, Defendants reiterate their contentions that: (1) venue is improper in this Court; (2) Plaintiff's individual capacity RLUIPA claims against them should be dismissed; (3) Plaintiff's official capacity RLUIPA claims against them should be dismissed; (4) Plaintiff's official capacity claims against them should b dismissed; and (5) Plaintiff's Due Process claims against them should be dismissed. *Id.* Defendants note that Plaintiff is no longer an inmate at WCF, and argue that his request for injunctive relief is therefore moot. *Id.* Defendants contend that, "because Plaintiff's only potential remedy under RLUIPA relates to injunctive relief and because Plaintiff is no longer incarcerated at WCF, any and all RLUIPA claims, and any other claims for injunctive relief for that matter, against these Defendants should be dismissed." *Id.* at 2.

For the reasons discussed below, the undersigned finds that this Court is the improper venue for Plaintiff's claims against the WCF Defendants, and that transferring Plaintiff's claims

14

Case 1:15-cv-00115   Document 161   Filed 07/13/17   Page 14 of 19 PageID #: 543

against the instant Defendants to the Western District of Tennessee would be futile. The undersigned therefore recommends that Defendants' Motion to Dismiss (Docket No. 125) be GRANTED, and that Defendants Ford, Johnson, and Leek be TERMINATED as parties in this action.

## II. Law and Analysis

### A. Venue

#### 1. Fed. R. Civ. P. 12(b)(3) - Motions to Dismiss for Improper Venue

Pursuant to Fed. R. Civ. P. 12(b)(3), a party can file a Motion to Dismiss based on improper venue:

> **(b) How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> . . .
>
> **(3)** improper venue

#### 2. 28 U.S.C. §1391

Addressing the issue of venue generally, 28 U.S.C. §1391(b) states:

> **(b) Venue in general.** – A civil action may be brought in –
>
> **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> **(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

15

## B. Fed. R. Civ. P. 12(b)(6) - Motions to Dismiss for Failure to State a Claim

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common

16

> sense. . . . But where the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct, the
> complaint has alleged - but it has not "show[n]" - "that the pleader
> is entitled to relief."

556 U.S. at 678-79 (citations omitted).

**C. The Case at Bar**

As an initial matter, there are currently twenty-three (23) remaining Defendants in this action, only three (3) of whom are parties to the instant Motion. *See, e.g.,* Docket Nos. 1, 1-2, 125, Docket sheet. Plaintiff is a TDOC inmate serving a sentence of eighteen (18) years, who, at all times relevant to the case at bar, was housed at RMSI, WCF, and SCCF. Docket No. 1-2. Plaintiff filed the instant lawsuit essentially against three (3) distinct groups of Defendants: TDOC/RMSI employees, WCF employees, and SCCF employees. Docket Nos. 1, 1-2. While it is true that venue is proper in this Court for Plaintiff's claims against the TDOC/ RMSI employees and the SCCF employees, as Plaintiff acknowledges in his Complaint, WCF is located within the Western District of Tennessee. Only the WCF employees are parties to the Motion to Dismiss for improper venue now pending before the Court. Docket No. 125.

Although Plaintiff has filed one lawsuit against the twenty-three (23) remaining Defendants and venue in this Court is proper for two (2) of the three (3) groups of Defendants, Plaintiff's claims against each set of Defendants relates to his confinement in each institution; they are separate and distinct claims against each set of Defendants from each institution, and the undersigned will consider them as such. Because WCF is located in the Western District of Tennessee, the WCF employees reside in the Western District of Tennessee, and the allegedly violative conduct by the WCF employees of which Plaintiff complains occurred in the Western

17

Case 1:15-cv-00115   Document 161   Filed 07/13/17   Page 17 of 19   PageID #: 546

District of Tennessee, venue is proper in the Western District of Tennessee.  Furthermore, there is no common nucleus tying the allegedly violative conduct by the WCF employees to that of the TDOC/RMSI employees or the SCCF employees that the undersigned would consider as sufficient to establish venue as proper in this Court.  Accordingly, the undersigned finds that this Court is the improper venue for Plaintiff's claims against the WCF Defendants.

The undersigned further finds that transferring Plaintiff's claims against the WCF Defendants to the Western District would be futile since: (1) Plaintiff is no longer housed at WCF and his claims for declaratory and injunctive relief are therefore moot (*see, e.g., Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013); *Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996)); (2) Plaintiff's official capacity claims against the WCF Defendants are properly brought against their employer, CCA, which has been terminated as a party to this action; and (3) the allegations in Plaintiff's Complaint (Docket Nos. 1, 1-2) fail to establish sufficient personal involvement to demonstrate that any of the WCF Defendants, in their individual capacity, violated Plaintiff's rights.

### III.  Conclusion

For the reasons set forth above, the undersigned finds that this Court is the improper venue for Plaintiff's claims against the WCF Defendants, and that transferring Plaintiff's claims against the instant Defendants to the Western District of Tennessee would be futile.  The undersigned therefore recommends that Defendants' Motion to Dismiss (Docket No. 125) be GRANTED, and that Defendants Ford, Johnson, and Leek be TERMINATED as parties in this action.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                                                                                       _____
                                                                                       JEFFERY S. FRENSLEY
                                                                                       United States Magistrate Judge