# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| **MICHAEL BRANDON ADAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:15-cv-0115** |
| | ) | **Judge Campbell / Frensley** |
| **TENNESSEE DEPARTMENT OF** | ) | |
| **CORRECTION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon a Motion for Summary Judgment filed by

Defendants Lindamood, Spears, Staggs, Runions, Brewer, Caperton, Stillman, and Woods, the

only remaining Defendants in this action. Docket No. 214. Along with their Motion, Defendants

have contemporaneously filed a supporting Memorandum of Law (Docket No. 215), a Statement

of Undisputed Material Facts (Docket No. 216), and the Declarations of Leigh Staggs (Docket

No. 214-1), Brenda Caperton (Docket No. 214-2), Bruce Woods (Docket No. 214-3), Cherry

Lindamood (Docket No. 214-4), Lee Brewer (Docket No. 214-5), Patrick Stillman (Docket No.

214-6), Randall Runions (Docket No. 214-7), Wanda Spears (Docket No. 214-8), and Crystal

Cummings (Docket No. 214-9).

As grounds for their Motion, Defendants argue that Plaintiff has: (1) failed to exhaust his

administrative remedies; (2) failed to establish that any Defendant violated his First Amendment

religious rights; (3) failed to establish denial of equal protection; (4) failed to establish that any

Defendant denied him access to the Courts; (5) failed to establish that any Defendant deprived him of any constitutional right related to his security classification; and (6) failed to state a deprivation of property claim, particularly because he has not alleged a causal connection between Defendant Stillman and his allegedly stolen property and has not alleged that his state law remedies are inadequate. Docket No. 215. Defendants additionally argue that: (1) Plaintiff has no constitutional right to access an institutional grievance procedure; (2) Plaintiff is not entitled to a grievance system that meets his personal standards; and (3) SCCF adheres to appropriate grievance procedures as set forth by the TDOC, such that any claim Plaintiff asserts against the SCCF grievance procedure or Defendant Staggs related thereto should be dismissed. *Id.*

Defendants further argue that RLUIPA does not permit recovery against them in their individual capacities, such that those claims must be dismissed. *Id.* Defendants note that all official capacity claims have been dismissed except for Plaintiff's official capacity claim against Defendant Lindamood as the SCCF Warden, and Defendants maintain that Plaintiff's official capacity RLUIPA claim against her should be dismissed as a matter of law because "RLUIPA does not authorize monetary damages as a form of relief against a government or its officials for violations of its provisions" and Plaintiff's claims for declaratory and injunctive relief have become moot since he has been transferred to a facility other than SCCF. *Id.*, *quoting Huddleston v. Wilson Cnty. Crim. Justice Complex*, 2016 U.S. Dist. LEXIS 46599 (M.D. Tenn. April 5, 2016), *citing Sossamon v. Texas*, 562 U.S. 277, 280 (2011); *Haight v. Thompson*, 763 F.3d 554, 568-70 (6th Cir. 2014).

Plaintiff has not responded to the instant Motion or to Defendants' Statement of

Undisputed Material Facts.

Plaintiff, an inmate within the custody and control of the Tennessee Department of Correction("TDOC") who, from May 2015 to January 2016 was housed at South Central Correctional Facility ("SCCF"), but who is currently housed at Turney Center Industrial Complex, filed this pro se, in forma pauperis, action pursuant to 42 U.S.C. §1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), alleging that multiple Defendants from several correctional institutions violated his constitutional rights. Docket Nos. 1, 1-2.[1]  In his Complaint, Plaintiff asks this Court to permit him to proceed in forma pauperis, to appoint him counsel, and to issue several orders.  Docket No. 1-2, ¶¶ 214, 216, 222-29.  Plaintiff additionally seeks declaratory and injunctive relief,[2] as well as costs, fees, punitive damages in the amount of $2,500.00 from each Defendant, and any further relief the Court "deems fit and appropriate."  *Id.*, ¶¶ 215, 217-21, 227-28, 230.

Although Plaintiff originally sued seven (7) members of the staff at Riverbend Maxium Security Institution, four (4) TDOC administrators, and eleven (11) CoreCivic (formerly "Corrections Corporation of America") staff members,[3] all in their individual and official

---

[1] The Complaint that Plaintiff submitted that is docketed as Docket No. 1 is ten (10) pages and ends in the middle of a sentence, as quoted above.  The same day, Plaintiff submitted another filing titled as a Complaint that is twenty-seven (27) pages; this submission is docketed as Docket No. 1-2.

[2] The record reflects that Plaintiff is no longer incarcerated at any of the three (3) institutions of which he complained.  "It is well-established that a 'prisoner's request for injunctive and declaratory relief is moot upon his transfer to a different facility.'" *Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013), *citing Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

[3] Plaintiff also named the TDOC, the Tennessee Parole Board, and CoreCivic as Defendants in this action, but the Court dismissed Plaintiff's claims against them.  Docket No. 6.

capacities, the only remaining Defendants are the instant Defendants and the only remaining

claims involve (1) denial of a diet consistent with Plaintiff's religious beliefs; (2) denial of access

to the Courts; (3) denial of an appropriate security classification; and (4) the deprivation of

certain items of personal property. *See* Docket Nos. 1, 1-2, 6, 167, 223, 226.

For the reasons discussed below, the undersigned finds that Plaintiff has failed to exhaust

his administrative remedies as required under the PLRA. The undersigned further finds that the

undisputed facts demonstrate that Defendants did not violate Plaintiff's constitutional rights,

such that Defendants are entitled to a judgment as a matter of law. The undersigned therefore

recommends that Defendants' Motion for Summary Judgment (Docket No. 214) be GRANTED,

and that this action be DISMISSED WITH PREJUDICE.

## II.  Undisputed Facts[4]

### A.  Declaration of Leigh Staggs

At all times relevant to the instant action, Defendant Staggs was employed as the

Grievance Chairperson at SCCF. Docket No. 214-1 ("Staggs Dec."), ¶ 2. As such, Defendant

Staggs is familiar with all applicable TDOC requirements and policies governing an inmate's use

of the grievance system. *Id.*, ¶ 3.

SCCF follows the TDOC policy that allows inmates to submit a written complaint /

grievance concerning the substance or application of a written or unwritten policy or practice,

---

Additionally, "K. Rivera" and "f/n/u Bacchus" have not been served; Jason Woodall is deceased;
and the three (3) WCF Defendants (Tammy Ford, "F. Johnson," and Brandon Leek) have been
dismissed.

[4] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56,
and are undisputed.

any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within SCCF, which personally affects the inmates. *Id.*, ¶ 4.

Upon arrival at SCCF, each inmate is given a copy of the "TDOC Inmate Grievance Procedures" (an inmate grievance handbook) which explains the policies and procedures for using the grievance process. *Id.*, ¶ 5. Pursuant to TDOC policy and the Inmate Grievance Handbook, an inmate must submit his grievance within seven (7) calendar days of the occurrence of the incident about which he is grieving. *Id.*, ¶ 6. Pursuant to TDOC policies and procedures, and as explained in the Inmate Grievance Handbook and the appropriate grievance notification, an inmate is also required to provide specific details such as "dates, times, and the names of the persons involved" in the occurrence giving rise to the grievance. *Id.*, ¶ 7.

Pursuant to the TDOC policies and procedures, an inmate has exhausted his administrative remedies when the inmate has filed an appropriate and proper grievance and appealed the response all the way through the TDOC Commissioner's Office. *Id.*, ¶ 8.

SCCF maintains records of all inmate grievances properly filed and those inmate grievances are recorded in the Tennessee Offender Management Information System ("TOMIS"), a computerized database for the TDOC. *Id.*, ¶ 9. When an inmate submits a grievance that is inappropriate pursuant to TDOC policies and procedures, however, that grievance is returned to the inmate. *Id.*, ¶ 10. All inappropriate grievances are returned to the inmate with an explanation as to why the grievance was deficient contained on a separate sheet of paper and/or upon the face of the grievance itself. *Id.*

Since Defendant Staggs began her then-current term as a Grievance Chair, a copy of each returned inmate grievance has been filed and maintained in the grievance office. *Id.* Defendant

Staggs has reviewed TOMIS to determine what grievances Plaintiff filed. *Id.*, ¶ 11. Based on her review of TOMIS, Plaintiff properly filed four (4) grievances while incarcerated at SCCF. *Id.* Plaintiff's first grievance (No. 292349/22708) was received in July 2015 and related to complaints concerning restrictions on Plaintiff's visitations with his daughter. *Id.*, ¶ 12. Plaintiff's second grievance (No. 23056/295200) was received in October 2015 and related to Plaintiff's being placed on pending investigation for his proximity to discovered contraband. *Id.*, ¶ 13. Plaintiff's third grievance (No. 23117/295882) was received in November 2015 and related to Plaintiff's allegations that he had been yelled at by a case manager while inmates in Plaintiff's housing unit were congregating to receive influenza vaccinations. *Id.*, ¶ 14. Plaintiff's fourth grievance (No. 297214/23254) was received in December 2015 and related to Plaintiff's complaints concerning his facility job duties. *Id.*, ¶ 15.

Defendant Staggs has also reviewed the files maintained in the Grievance Office at SCCF to determine if Plaintiff submitted any other grievances that were returned to him as inappropriate. *Id.*, ¶ 16. Based upon Defendant Staggs' review, Plaintiff submitted three (3) illegible grievances in June 2015 and one (1) illegible grievance in July 2015. *Id.*, ¶ 16. Specifically, grievances are submitted on carbon copy paper, consisting of the original and three (3) copies. *Id.* Because the aforementioned grievances were not legible on all copies, said grievances were not processed and were returned to Plaintiff for revision and resubmission if desired. *Id.* After receiving the returned, deficient grievances, Plaintiff also had the ability to appeal the determination that said grievances were not legible on all copies. *Id.*, ¶ 17. Plaintiff was not deterred from revising and resubmitting said grievances and/or appealing the determination related to the sufficiency of said grievances in any way. *Id.*, ¶ 18.

If Plaintiff would have properly revised and resubmitted said grievances, said grievances would have been recorded on TOMIS. *Id.*, ¶ 19. If Plaintiff would have appealed the determination concerning the deficiency of said grievances, his appeal would have been recorded on TOMIS. *Id.*, ¶ 20. Based on Defendant Stagg's review of TOMIS, Plaintiff did not revise and resubmit said grievances, nor did he appeal any determinations related to said grievances. *Id.*, ¶¶ 21, 22.

Other than the grievances discussed herein, Plaintiff did not submit any other grievances, whether appropriate or inappropriate pursuant to TDOC policies and procedures, while incarcerated at SCCF. *Id.*, ¶ 23.

At all times, Defendant Staggs acted in good faith in enforcing the policies and procedures of TDOC/CCA/SCCF, and further acted in good faith without deliberate indifference to the rights or freedoms of Plaintiff. *Id.*, ¶ 24.

**B. Declaration of Brenda Caperton**

At all times relevant to the case at bar, Defendant Caperton was employed as a full-time educator at SCCF's Annex, where she taught a class of approximately twenty (20) to thirty-five (35) full-time students. Docket No. 214-2 ("Caperton Dec."), ¶ 2. SCCF's Annex is detached from the main compound. *Id.*, ¶ 3. Said building has a separate library. *Id.* Inmates housed at SCCF's Annex are provided access to said library. *Id.* Inmates housed at SCCF's Annex are allowed to utilize the computer in the Annex's library. *Id.* When using the computer, inmates are allowed to print legal documents from a printer/copier. *Id.* Inmates are also permitted to request that their legal documents be copied with the printer/copier. *Id.*

Inmates are charged for each page that they print and/or copy. *Id.*, ¶ 4. Said charges are

deducted from the inmate's trust fund account. *Id.* If an inmate's account balance is zero at the time that he prints a document and/or requests a document to be copied, he is required to complete a withdrawal form. *Id.* After completing said withdrawal form, the inmate is allowed to print/copy the requested document. *Id.* Subsequently, when the inmate's account receives funds, the balance of his withdrawal form(s) are automatically deducted from his account. *Id.* Pursuant to this withdrawal system, therefore, inmates are not denied the ability to print and/or copy legal documents due to an inability to pay for said printouts/copies. *Id.* This withdrawal system was in place at all times relevant to Plaintiff's Complaint. *Id.*

When not teaching in the Annex, Defendant Caperton makes herself available to assist inmates in retrieving documents printed from said printer and to assist with the requested copies for inmates. *Id.*, ¶ 5.

When an inmate requests copies from the printer in SCCF's Annex his requests are noted in a log book. *Id.*, ¶ 6. Based upon said log book pages, Plaintiff received copies and/or the services of a notary on the following dates: May 20, 2015; June 29, 2015; July 14, 2015; September 18, 2015; September 22, 2015; October 9, 2015; October 12, 2015; October 20, 2015; October 21, 2015; November 3, 2015; November 19, 2015; December 4, 2015; December 9, 2015; December 14, 2015; and January 12, 2016. *Id.*, ¶ 7.

At no time did Defendant Caperton knowingly or intentionally limit Plaintiff's access to any Court in any manner whatsoever. *Id.*, ¶ 8. At all times, Defendant Caperton acted in good faith in enforcing the policies and procedures of TDOC/CCA/SCCF, and she further acted in good faith without deliberate indifference as to the rights or freedoms of Plaintiff. *Id.*

## C. Declaration of Bruce Woods

At all times relevant to the instant action, Defendant Woods has been employed by CCA as the Principal at SCCF. Docket No. 214-3 ("Woods Dec."), ¶ 2. As such, Defendant Woods supervises teachers, library personnel, and work program facilitators, and is familiar with all applicable TDOC requirements and policies governing an inmate's incarceration at SCCF. *Id.*

Also at all times relevant to Plaintiff's Complaint, indigent inmates at SCCF were offered indigent kits on a monthly basis. *Id.*, ¶ 3. Said kits included, among other items, envelopes, paper, and pens. *Id.*

Inmates housed at SCCF's Annex are provided access to the Annex's library. *Id.*, ¶ 4. Inmates housed at SCCF's Annex are allowed to utilize the computer in the Annex's library. *Id.* When using the computer, inmates are allowed to print legal documents from a printer/copier. *Id.* Inmates are also permitted to request that their legal documents be copied with the printer/copier. *Id.*

Inmates are charged for each page that they print and/or copy. *Id.*, ¶ 5. Said charges are deducted from the inmate's trust fund account. *Id.* If an inmate's account balance is zero at the time that he prints a document and/or requests a document to be copied, he is required to complete a withdrawal form. *Id.* After completing said withdrawal form, the inmate is allowed to print/copy the requested document. *Id.* Subsequently, when the inmate's account receives funds, the balance of his withdrawal form(s) are automatically deducted from his account. *Id.* Pursuant to this withdrawal system, therefore, inmates are not denied the ability to print and/or copy legal documents due to an inability to pay for said printouts/copies. *Id.* This withdrawal system was in place at all times relevant to Plaintiff's Complaint. *Id.*

At no time did Defendant Woods knowingly or intentionally limit Plaintiff's access to any Court in any manner whatsoever. *Id.*, ¶ 6. At all times, Defendant Woods acted in good faith in enforcing the policies and procedures of TDOC/CCA/SCCF, and he further acted in good faith without deliberate indifference as to the rights or freedoms of Plaintiff. *Id.*

**D. Declaration of Cherry Lindamood**

At all times relevant to the case at bar, Defendant Lindamood was employed as Warden of SCCF, which is a correctional facility operated by CCA that houses sentenced prisoners who are in TDOC custody. Docket No. 214-4 ("Lindamood Dec."), ¶ 2. As SCCF Warden, Defendant Lindamood is familiar with all applicable TDOC requirements and policies governing an inmate's incarceration at SCCF. *Id.*, ¶ 3.

Plaintiff arrived at SCCF in May 2015 and was transferred from SCCF in January 2016. *Id.*, ¶ 4.

At all times, Defendant Lindamood acted in good faith in enforcing the policies and procedures of TDOC/CCA/SCCF, and she further acted in good faith without deliberate indifference as to the rights or freedoms of Plaintiff. *Id.*, ¶ 5.

**E. Declaration of Lee Brewer**

At all times relevant to the instant action, Defendant Brewer was employed by CCA as the Classification Coordinator at SCCF. Docket No. 214-5 ("Brewer Dec."), ¶ 2. As such, Defendant Brewer is familiar with all applicable TDOC requirements and policies governing an inmate's classification. *Id.*, ¶ 3. SCCF follows said policies and procedures. *Id.*

As the Classification Coordinator, Defendant Brewer oversees a unit team comprised of SCCF employees. *Id.*, ¶ 4. Defendant Brewer, along with his unit team, judiciously evaluate

each of the inmates housed at SCCF's Annex in order to determine whether said inmates can be classified as minimum trustees. *Id.*, ¶ 5. Said evaluations are on an individual basis according to several factors, including but not limited to, each inmate's prior and current behavior, as well as the facility's unique security concerns. *Id.* An inmate's prior classification at a facility other than SCCF does not automatically qualify him to become a trustee at SCCF's Annex. *Id.*, ¶ 6.

Minimum trustee status is a highly-regarded privilege that is not awarded to inmates until Defendant Brewer and his unit team have had an opportunity to evaluate the inmate over an extensive period of time. *Id.*, ¶ 7. Plaintiff arrived at SCCF in May of 2015 and he was transferred to TCIX based upon his own request in January of 2016. *Id.* Defendant Brewer and his team were not provided sufficient time to evaluate Plaintiff for trustee status during the short time he was housed at SCCF. *Id.*

Because classification determinations concerning trustee status are conducted by Defendant Brewer and his unit team solely for the use of SCCF's Annex, Defendant Brewer does not make recommendations for other facilities. *Id.*, ¶ 8. Accordingly, Defendant Brewer did not make a recommendation for Plaintiff to be classified as a minimum trustee after his transfer to TCIX. *Id.*

At all times, Defendant Brewer acted in good faith in enforcing the policies and procedures of TDOC/CCA/SCCF, and he further acted in good faith without deliberate indifference as to the rights or freedoms of Plaintiff. *Id.,* ¶ 9.

**F.  Declaration of Patrick Stillman**

At all times relevant to Plaintiff's Complaint, Defendant Stillman was employed by CCA as a Senior Correctional Officer at SCCF. Docket No. 214-6 ("Stillman Dec."), ¶ 2. In that role,

Defendant Stillman was made familiar with all applicable TDOC/CCA/SCCF requirements and policies governing the inmate property inventory process. *Id.*

On or about August 9, 2015, Plaintiff's property was properly inventoried by SCCF staff while Plaintiff's property was packed due to his being transferred to another housing location. *Id.*, ¶ 3.

At no time did Defendant Stillman ever improperly or illegally confiscate or destroy any permitted items of Plaintiff's property or belongings. *Id.*, ¶ 4.

At all times, Defendant Stillman acted in good faith in enforcing the policies and procedures of TDOC/CCA/SCCF, and he further acted in good faith without deliberate indifference as to the rights or freedoms of Plaintiff. *Id.*, ¶ 5.

## G. Declaration of Randall Runions

At all times relevant to the case at bar, Defendant Runions was employed by CCA as the Chaplain at SCCF. Docket No. 214-7 ("Runions Dec."), ¶ 2. As such, Defendant Runions is familiar with all applicable TDOC requirements and policies governing an inmate's request for religious diets. *Id.*, ¶ 3.

CCA maintains policies and procedures which establish an inmate's rights, and one of these established rights is the right to freedom of religious affiliation and voluntary religious worship. *Id.*, ¶ 4. SCCF follows said policies and procedures. *Id.*

TDOC Policy #118.01 provides that inmates may voluntarily participate in religious activities and that the facility staff will monitor those religious activities. *Id.*, ¶ 5. TDOC Policy #118.01 further provides, "Inmates may request to participate in the Religious Diet Program per Policy #116.08 and may contact the Chaplain to complete the Request for Religious Diet

Program Participation and Agreement, CR-3814." *Id.*, ¶ 6.

CCA Policy #11-1 provides, "Religious diets shall be provided for inmates/residents whose religious belief require adherence to religious dietary laws." *Id.*, ¶ 7. CCA Policy #11-1 further provides, "Religious diets should be kept as simple as possible and should conform as closely as possible to the food served other inmates/residents." *Id.*, ¶ 8.

At all times relevant to Plaintiff's Complaint, SCCF inmates were provided with two (2) options at each meal, a regular meal and an alternative meal. *Id.*, ¶ 9. Inmates could choose whether they were provided the regular meal or the alternative meal at each meal time. *Id.* The alternative meal complied with the requirements of a Halal diet at all times. *Id.*

At all times, Defendant Runions acted in good faith in enforcing the policies and procedures of TDOC/CCA/SCCF, and he further acted in good faith without deliberate indifference as to the rights or freedoms of Plaintiff. *Id.*, ¶ 10.

## H. Declaration of Wanda Spears

Defendant Spears has been employed by CCA as a Librarian at SCCF since March 2014. Docket No. 214-8 ("Spears Dec."), ¶ 2. As a Librarian, Defendant Spears is familiar with all applicable TDOC requirements and policies governing an inmate's incarceration at SCCF. *Id.*

At all times relevant to Plaintiff's Complaint, indigent inmates at SCCF were offered indigent kits on a monthly basis. *Id.*, ¶ 3. Said indigent kits include, among other items, envelopes, paper, and pens. *Id.*

Inmates housed at SCCF's Annex are provided access to the Annex's library. *Id.*, ¶ 4. Inmates housed at SCCF's Annex are allowed to utilize the computer in the Annex library. *Id.* When using the computer, inmates are allowed to print legal documents from a printer/copier.

13

*Id.* Inmates are also permitted to request that their legal documents be copied with the printer/copier. *Id.*

Inmates are charged for each page that they print and/or copy. *Id.*, ¶ 5. Said charges are deducted from the inmate's trust fund account. *Id.* If an inmate's account balance is zero at the time that he prints a document and/or requests a document to be copied, he is required to complete a withdrawal form. *Id.* After completing said withdrawal form, the inmate is allowed to print/copy the requested document. *Id.* Subsequently, when the inmate's account receives funds, the balance of his withdrawal form(s) are automatically deducted from his account. *Id.* Pursuant to this withdrawal system, therefore, inmates are not denied the ability to print and/or copy legal documents due to an inability to pay for said printouts/copies. *Id.* This withdrawal system was in place at all times relevant to Plaintiff's Complaint. *Id.*

At no time did Defendant Spears knowingly or intentionally limit Plaintiff's access to any Court in any manner whatsoever. *Id.*, ¶ 6. At all times, Defendant Spears acted in good faith in enforcing the policies and procedures of TDOC/CCA/SCCF, and she further acted in good faith without deliberate indifference as to the rights or freedoms of Plaintiff. *Id.*

**I.  Declaration of Crystal Cummings**

At all times relevant to the instant action, Defendant Cummings was employed by CCA as a Business Manager at SCCF. Docket No. 214-9 ("Cummings Dec."), ¶ 2. In that role, Defendant Cummings is familiar with all applicable TDOC/CCA/SCCF requirements and policies governing the access to commissary by inmates. *Id.* SCCF maintains records of commissary items purchased by inmates incarcerated at SCCF. *Id.*, ¶ 3.

At all times, Defendant Cummings acted in good faith in enforcing the policies and

procedures of TDOC/CCA/SCCF, and she further acted in good faith without deliberate indifference as to the rights or freedoms of Plaintiff.  *Id.*, ¶ 4.

### III.  Law and Analysis

#### A.  Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b.  Response.**  Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court.  Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the instant Motion on May 30, 2018.  Docket No. 214.  Plaintiff has failed to respond to Defendants' Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c.  Response to Statement of Facts.**  Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed.  Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g.  Failure to Respond.**  Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendants' Statement of Undisputed Material Facts or

file his own Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential

element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C. 42 U.S.C. § 1983

Plaintiff alleges that Defendants violated his constitutional rights pursuant to 42 U.S.C. § 1983. *See* Docket Nos. 1, 1-2. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**D. Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")**

Regarding claims against Defendants in their official capacities, this Court recently explained, "RLUIPA does not authorize monetary damages as a form of relief against a government or its officials for violations of its provisions." *Huddleston v. Wilson Cnty. Crim. Justice Complex*, 2016 U.S. Dist. LEXIS 46599 (M.D. Tenn. April 5, 2016), *citing Sossamon v. Texas* 563 U.S. 277, 280 (2011); *Haight v. Thompson*, 763 F.3d 554, 568-70 (6th Cir. 2014).

As to claims against Defendants in their individual capacities, the Sixth Circuit itself has not directly addressed this issue, but the Eleventh Circuit in *Smith v. Allen,* 502 F.3d 1255, 1274 (2007), held that because the RLUIPA was enacted pursuant to Congress' Article I spending power and "the Spending Power cannot be used to subject individual defendants, such as state

employees, to individual liability in a private cause of action," the RLUIPA did not authorize

suits against persons in their individual capacities.

**E.  Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e**

A prisoner must exhaust all available administrative remedies before filing a claim under

§1983 or any other federal law.  42 U.S.C. §1997e(a).  *See also, e.g., White v. McGinnis*, 131

F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v.*

*Leonard*, 193 F.3d 876, 878 (6th Cir. 1999).  The Prison Litigation Reform Act of 1995 provides

in pertinent part as follows:

> (a)  **Applicability of Administrative Remedies**.  No action shall
> be brought with  respect to prison conditions under section 1983
> of this title, or any other Federal law, by a prisoner confined in
> any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements

of § 1997e(a).  Rather, the PLRA exhaustion of prison administrative remedies requires a

prisoner to pursue his prison grievance through the final level of administrative appeal.

*Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999).  In *Hartsfield*, the Sixth Circuit explicitly

stated:

> Even if Plaintiff did file an initial grievance against [defendants],
> he was required to continue to the next step in the grievance
> process . . . .  We have previously held that an inmate cannot simply
> . . . abandon the process before the completion and claim that he
> has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state

administrative remedies," the only remaining question is whether Plaintiff's claims have been

brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

## F.  The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in § 1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

The undisputed facts establish, *inter alia*, that, SCCF follows the TDOC policy that allows inmates to submit a written complaint / grievance concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within SCCF, which personally affects the inmates pursuant to TDOC policies and procedures, and that an inmate has exhausted his

administrative remedies when the inmate has filed an appropriate and proper grievance and appealed the response all the way through the TDOC Commissioner's Office. Staggs Dec., ¶¶ 4, 8.

The undisputed facts further establish that, upon arrival at SCCF, each inmate is given a copy of the "TDOC Inmate Grievance Procedures" (an inmate grievance handbook) which explains the policies and procedures for using the grievance process. *Id.*, ¶ 5. The undisputed facts demonstrate that Plaintiff utilized the grievance process at SCCF, properly filing four (4) grievances and improperly filing an additional four (4) illegible grievances. *Id.*, ¶¶ 12-16, 23. It is undisputed that Plaintiff had the ability to appeal the determination that the four (4) improper grievances were not legible on all copies, but Plaintiff did not revise and resubmit said grievances, nor did he appeal any determinations related to said grievances. *Id.*, ¶¶ 17, 21, 22. Additionally, it is undisputed that Plaintiff was not deterred from revising and resubmitting said grievances and/or appealing the determination related to the sufficiency of said grievances in any way. *Id.*, ¶ 18. Because Plaintiff did not appeal his grievance responses through to the TDOC Commissioner's Office as required under TDOC policies and procedures, Plaintiff has failed to exhaust his administrative remedies. Accordingly, this action should be dismissed.

Even if Plaintiff had properly exhausted his administrative remedies, however, the undisputed facts establish that Defendants did not violate his constitutional rights. Specifically, the undisputed facts demonstrate that Defendants did not knowingly or intentionally limit Plaintiff's access to the courts as inmates at SCCF are provided access to the library and to computers and are not denied the ability to print and/or copy legal documents due to an inability to pay for said printouts/copies; indigent inmates are provided monthly indigent kits containing,

*inter alia*, envelopes, paper, and pens; and Plaintiff received copies and/or the services of a notary on May 20, 2015; June 29, 2015; July 14, 2015; September 18, 2015; September 22, 2015; October 9, 2015; October 12, 2015; October 20, 2015; October 21, 2015; November 3, 2015; November 19, 2015; December 4, 2015; December 9, 2015; December 14, 2015; and January 12, 2016. Caperton Dec., ¶¶ 3, 4, 7, 8; Woods Dec., ¶¶ 3-6; Spears' Dec., ¶¶ 3-6. The undisputed facts further demonstrate that Defendants did not deny Plaintiff a religious meal and in fact provided a Halal meal option at each meal. Runions Dec., ¶ 9. Additionally, the undisputed facts establish that at no time did Defendants improperly or illegally confiscate or destroy any permitted items of Plaintiff's property or belongings. Stillman Dec., ¶ 4. Finally, it is undisputed that, at all times relevant to the instant action, all Defendants acted in good faith in enforcing the policies and procedures of TDOC/CCA/SCCF, and further acted in good faith without deliberate indifference as to the rights or freedoms of Plaintiff. Staggs Dec., ¶ 24; Caperton Dec., ¶ 8; Woods Dec., ¶ 6; Lindamood Dec., ¶ 5; Brewer Dec., ¶ 9; Stillman Dec., ¶ 5; Runions Dec., ¶ 10; Spears Dec., ¶ 6; Cummings Dec., ¶ 4.

### IV. Conclusion

For the reasons set forth above, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as required under the PLRA. The undersigned further finds that the undisputed facts demonstrate that Defendants did not violate Plaintiff's constitutional rights, such that Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 214) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


                                          _____

                                          JEFFERY S. FRENSLEY
                                          United States Magistrate Judge